Daniel R. Ortega, Jr., SBN: 005015
**Ortega Law Firm, P.C.**
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455
Fax: (602) 386-4480
Danny@ortegalaw.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Mikayla R. Johnson and Gabriel Galaviz Riveras; individually, | No.: |
| Plaintiffs, | **CIVIL RIGHTS COMPLAINT (42 U.S.C. § 1983)** |
| v. | **1.  EXCESSIVE FORCE (42 U.S.C. § 1983 FOURTH AMENDMENT)** |
| City of Phoenix, a municipal corporation; Chief of Police Jeri Williams; Commander Dennis Orender; Sergeant Douglas McBride; Lieutenant Benjamin Moore; Officer Geoffrey R. Tucker; Officer JD Kurtis Merena; Officer Sean Knapp, | **2.  UNLAWFUL ARREST (42 U.S.C. § 1983 FOURTH AMENDMENT)** |
| | **3.  MUNICIPAL LIABILITY UNDER *MONELL* (42 U.S.C. § 1983 FOURTH AMENDMENT)** |
| Defendants. | **4.  NEGLIGENT SUPERVISION AND/OR TRAINING UNDER ARIZONA LAW** |
| | **5.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER ARIZONA LAW** |
| | **(Demand for Jury Trial)** |

For their Complaint against defendants City of Phoenix and its Chief of Police, Jeri Williams, Commander Dennis Orender (No. 6875), Sergeant Douglas McBride (No. 6187), Lieutenant Benjamin Moore (No. 6803), Officer Geoffrey R. Tucker (No. 8034), Officer JD Kurtis Merena (No. 7117), and Officer Sean Knapp (No. 9603), plaintiffs

**ORTEGA LAW FIRM, P.C.**
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

Mikayla R. Johnson (" plaintiff Ms. Johnson") and Gabriel Galaviz Riveras ("plaintiff Mr. Galaviz Riveras"), individually and through undersigned counsel, hereby allege as follows:

## INTRODUCTION

1.     This case arises out of the Phoenix Police Department's ("PPD" or "Phoenix PD") highly publicized mass arrests of individuals in downtown Phoenix between the dates of May 30-31, 2020.  These individuals engaged in peaceful First Amendment protests.  These protests arose in the wake of the killing of George Floyd ("Mr. Floyd"), as well as other fatal shootings by law enforcement throughout Arizona and the United States of America.  Mr. Floyd was killed by a white Minneapolis police officer when he handcuffed Mr. Floyd and kneeled on his neck until his very last breath.  Plaintiffs happened to be in the area where the protests were taking place, but had no intentions in participating.  Plaintiffs were subjected to excessive use of force during the course of their unjustified arrests.   Phoenix PD then employed identical, unlawful "cut-and-paste" probable cause statements to charge individuals, including plaintiffs with either misdemeanors or felonies and cause them to be booked into jail during a global respiratory pandemic.

2.     The Courts who handled the initial appearances for these matters rightly determined that almost every case lacked sufficient probable cause to move forward, and almost every case was dismissed.

3.     Plaintiffs along with about 114 other individuals were arrested at the protests and were also illegally tear gassed and/or pepper-sprayed, pulled out of their vehicles at gunpoint, held in hot vans for hours in extreme temperatures without water or access to a restroom, and eventually crammed into small cells with scores of unmasked individuals, exposing them (and the community at large) to COVID-19.

///

///

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

**PARTIES**

*Plaintiffs*

4.      Plaintiff Mikayla R. Johnson is, and was at all relevant times, a resident of Maricopa County.  Plaintiff Ms. Johnson was not participating in any of the protests, but was in the downtown Phoenix area on May 31, 2020, around 7:00 p.m. looking for a place to eat with her boyfriend plaintiff Mr. Galaviz Riveras.  Plaintiff Ms. Johnson was arrested and jailed for 30 hours. She was charged with A.R.S. §§§ 13-2902 (unlawful assembly, a class 1 misdemeanor); 13-2904A5 (disorderly conduct-refuse to disperse, a class one misdemeanor); and 26-317 (violation of emergency order, a class 1 misdemeanor).  The court dismissed all of these charges.

5.      Plaintiff Mr. Galaviz Riveras is, and was at all relevant times, a resident of Maricopa County.  Plaintiff Mr. Galaviz Riveras was not participating in any of the protests, but was in the downtown Phoenix area on May 31, 2020, around 7:00 p.m. looking for a place to eat with his girlfriend plaintiff Ms. Johnson.  Plaintiff Mr. Galaviz Riveras was arrested and jailed for 30 hours.  He was charged with A.R.S. §§§ 13-2902 (unlawful assembly, a class 1 misdemeanor); 13-2904A5 (disorderly conduct-refuse to disperse, a class 1 misdemeanor); and 26-317 (violation of emergency order, a class 1 misdemeanor).  The court dismissed the charges for disorderly conduct-refuse to disperse and unlawful assembly.  Plaintiff Mr. Galaviz Riveras pled guilty to the violation of emergency order relying on the advice of his appointed public defender that he would get out of jail earlier if he did so.

*Defendants*

6.      Defendant City of Phoenix (the "City") is a municipal corporation created under the laws of the State of Arizona.  The City is under a duty to run its law enforcement activities in a lawful manner to preserve the peace and to preserve for its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona.

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

7.     The City has established or delegated to its law enforcement agency—the Phoenix Police Department—the responsibility for establishing and implementing policies, practices, procedures and/or customs used by law enforcement officers employed by the City regarding the investigation, detention, arrest, and public relations during law enforcement operations.  Thus, the Phoenix Police Department is an agency of the City of Phoenix, and all actions of the PPD are the legal responsibility of the City.

8.     Every act and omission of the employees, representatives, and agents of the defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America, the State of Arizona, and the City of Phoenix, by their authority as sworn officers, and within the course and scope of their employment.

9.     Defendant Jeri L. Williams is, and was at all relevant times, the Chief of Police for the City of Phoenix Police Department.  As such, Chief Williams is the final policymaker for the City in the area of law enforcement and in setting and implementing the policies and practices of PPD, including but not limited to the development, implementation, and the training of PPD personnel in the areas of proper use of force, the need for proper warnings in response to political protests and public demonstrations and marches, and lawful arrests.  Chief Williams is also responsible for the development and implementation of policies concerning protests and the protection of participants' basic rights of speech and association, and for making these policies known to all PPD personnel, and for ensuring that all members of the PPD were adequately and consistently trained in their meaning and implementation, as well as in all relevant constitutional requirements and police best practices.  Chief Williams was responsible for the training and preparation of PPD personnel with respect to the events between the dates of May 30-31, 2020, and she approved and/or ratified PPD's plans for that event—including the plans to conduct unlawful mass arrests of demonstrators using the same, illegal cut-and-paste probable cause statement to support those arrests.  As set out below, Chief Williams also failed to establish

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone: (602) 386-4455

sufficient guidelines and regulations governing the PPD between the dates of May 30-31, 2020, and did not ensure adequate training before the event, nor did she properly supervise and monitor the actions of PPD personnel during the protest.  Upon information and belief, she has failed to discipline a single officer for the mass false arrests that took place between the dates of May 30-31, 2020, and instead, made multiple public statements praising her officers' conduct during the course of that protest.  Plaintiffs sue Chief Williams in her individual capacity.

10.     Defendant Dennis Orender (No. 6875) is a Commander for the City of Phoenix Police Department. Commander Orender is a leader within PPD's Tactical Response Unit, and upon information and belief, "calls the shots" on when to make arrests and of whom.  Upon information and belief, Commander Orender either gave the order, approved, or ratified PPD's plans for arrests between the dates of May 30-31, 2020 at the protests—including the plans to apprehend demonstrators en masse using the same, illegal cut-and-paste probable cause statements to support their arrests.  Plaintiffs sue Commander Orender in his individual capacity.

11.     Defendant Douglas McBride (No. 6187) is a Sergeant with the City of Phoenix Police Department.  Between the dates of May 30-31, 2020, he was responsible for supervising PPD's Tactical Response Unit.  Upon information and belief, Sgt. McBride authorized the indiscriminate use of force against largely non-violent demonstrators, including the use of tear gas, pepper spray, and rubber bullets.  Upon information and belief, Sergeant McBride either gave the order, approved, or ratified PPD's plans for arrests between the dates of May 30-31, 2020 at the protests—including the plans to apprehend demonstrators en masse using the same, illegal cut-and-paste probable cause statements to support their arrests.  Plaintiffs sue Sergeant McBride in his individual capacity.

12.     Defendant Benjamin Moore (No. 6803) is a Lieutenant for the City of Phoenix Police Department, and is the "Field Force Commander" for PPD's Tactical Response Unit ("TRU").   Upon information and belief, Lt. Moore authorized the

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

indiscriminate use of force against largely non-violent demonstrators, including the use of tear gas, pepper spray, and rubber bullets. Upon information and belief, Lt. Moore either gave the order, approved, or ratified PPD's plans for arrests between the dates of May 30-31, 2020 at the protests—including the plans to apprehend demonstrators en masse using the same, illegal cut-and-paste probable cause statements to support their arrests. Plaintiffs sue Lt. Moore in his individual capacity.

13.     Upon information and belief defendant Phoenix Police Officer Geoffrey R. Tucker (No. 8034) ("Officer Tucker") unlawfully arrested plaintiff Mr. Galaviz Riveras. Defendant Officer Tucker's actions at all times herein mentioned were done within the course and scope of his employment with the City of Phoenix Police Department.

14.     Defendant Officer Tucker was at all times relevant to this complaint acting as an employee of the City of Phoenix Police Department pursuant to their policies. He is a state actor as the term is used in the jurisprudence of 42 U.S.C. § 1983.

15.     Upon information and belief defendant Phoenix Police Officer JD Kurtis Merena (No. 7117) ("Officer Merena") unlawfully arrested plaintiff Ms. Johnson. Defendant Officer Merena's actions at all times herein mentioned were done within the course and scope of his employment with the City of Phoenix Police Department.

16.     Defendant Officer Merena was at all times relevant to this complaint acting as an employee of the City of Phoenix Police Department pursuant to their policies. He is a state actor as the term is used in the jurisprudence of 42 U.S.C. § 1983.

17.     Upon information and belief defendant Phoenix Police Officer Sean Knapp (No. 9603) ("Officer Knapp") assisted Officer Merena with plaintiff Ms. Johnson's unlawful arrest. Defendant Officer Knapp's actions at all times herein mentioned were done within the course and scope of his employment with the City of Phoenix Police Department.

18.     Defendant Officer Knapp was at all times relevant to this complaint acting as an employee of the City of Phoenix Police Department pursuant to their policies. He is

a state actor as the term is used in the jurisprudence of 42 U.S.C. § 1983.

19.     Upon information and belief, there are currently unknown City of Phoenix employees who caused or contributed to Plaintiffs' injuries.  The identity and roles of these individuals are uniquely within the possession of the City of Phoenix and Plaintiffs will amend this complaint to add such responsible individuals upon discovery of their identities.

20.     Each of the above-mentioned individual defendants participated in and has responsibility for the unlawful conduct that resulted in injuries to plaintiffs described herein, by, among other things, personally participating in the unlawful conduct, acting jointly or conspiring with others who did so; authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct; failing to take action to prevent such unlawful conduct; failing to maintain adequate training and supervision in deliberate indifference to plaintiffs' rights; and ratifying unlawful conduct that occurred by agents and officers under their direction, supervision, and control, including failing to take remedial or disciplinary action.

## JURISDICTION AND VENUE

21.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over plaintiffs' claims for violation of their civil rights under 42 U.S.C. § 1983.  The Court has authority to award attorneys' fees under 42 U.S.C. § 1988(b).

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that each defendant resides within this District, and the acts and omissions that give rise to this action occurred within this District within the appropriate statutes of limitations, and this Court otherwise has jurisdiction.

23.     This case presents an actual case in controversy arising under the Fourth Amendment to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

24.     As to plaintiff's claims under state law, plaintiff served defendants with a Notice of Claim pursuant to A.R.S. § 12-821.01 which complied in all ways with the

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

statute, which was timely served and which is deemed denied by operation of statute.

## GENERAL ALLEGATIONS

### George Floyd Protests

25.     More than 300 Arizonans engaged in peaceful First Amendment protests between the dates of May 30-31, 2020, in downtown Phoenix, Arizona.  These protests were done to express their opposition to Mr. Floyd's murder.

### Phoenix PD's Excessive Force and False Arrests at Protests

26.     Between the dates of May 30-31, 2020, numerous PPD officers took on special assignments of working the protests in downtown Phoenix, Arizona, and were prideful in being able to use their military surplus equipment.  PPD acted in a warrior-style when they took on the assignments of hunting down enemies.  PPD interrupted peaceful protesters by requesting them to disburse.  Their plans, however, were unconstitutional and consisted of shooting the protesters with rubber bullets, as a result, protesters began to flee.

27.     PPD officers were present from the beginning of the protests, greatly armored in riot gear and wielding heavy weaponry including:  Pepper bullets; cannisters containing "CS" or tear gas; pepper-spray; mace; 40 mm foam impact rounds, which travel at speeds up to 89 miles per hour and contained both "CS" and cayenne pepper to deliver both blunt trauma as well as the effects of a chemical irritant; smoke grenades (explosive devises that release an irritant); rubber-coated bullets; beanbag rounds (small fabric bags filled with lead shot); and sound weapons like flash-bang grenades.

### Mass Unlawful Arrests and Imprisonment

28.     Police rounded up and arrested 114 people (some of whom were not even participating in the protests, but were simply in the downtown area on the aforementioned nights), such as plaintiffs utilizing a variety of tactics.  They "corralled" protesters in small areas then moved in on multiple sides to effect mass arrests.  They stopped passing vehicles with weapons drawn, pulled innocent people out, and ordered them to lay on the ground to

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

be handcuffed and arrested.

29.     Upon information and belief, the 114 arrests overwhelmed the ability of the Maricopa County Sheriff's Office to timely complete jail bookings.  Phoenix PD therefore caused many of the 114 individuals, including plaintiffs herein to be held in poorly or unventilated transport vans, for hours, without water or restroom access — causing some to vomit on themselves and others to involuntarily urinate.

30.     It was impossible to socially distance in these vans, and many of the individuals had either been forced to remove their masks (due to chemical contamination) or had their masks confiscated by Phoenix PD officers.

31.     Everyone arrested was also forced to spend time in jail, crammed into rooms with dozens of unmasked individuals, exposing them (and, in turn, the community at large) to COVID-19.

32.     As expected, the judges who reviewed these 114 cases found that almost all of them lacked probable cause because the cut-and-paste probable cause statement did not specify what behavior they believed each individual had allegedly engaged in.

### *Plaintiffs' Damages*

33.     On Sunday, May 31, 2020, around 6:00 p.m. Plaintiff Mr. Galaviz Riveras was driving his white 2016 Jeep Cherokee along with his girlfriend, plaintiff Ms. Johnson who was sitting in the front passenger's seat, and were dropping off plaintiff Mr. Galaviz Riveras' child at the mother's house, which was in the West Valley.  After they dropped off his child, he and plaintiff Ms. Johnson decided to get dinner near downtown Phoenix.

34.     On this same evening around 7:00 p.m., while plaintiff Mr. Galaviz Riveras and plaintiff Ms. Johnson were looking for a place to eat near the area of 7th Avenue and Roosevelt, they were suddenly trapped by protesters.  There were numerous protesters around his vehicle. They knew they needed to get out of the area, so plaintiff Mr. Galaviz Riveras pulled over to ask the closest officer for exit directions since he was not very familiar with the area.  That officer whose name is unknown directed him to make a left,

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

suddenly, plaintiffs were tear gassed causing great discomfort when the smell came in through the vehicle's air vents. When they eventually made the left turn, and other turns, they ended up near 9th Street and Garfield, which was blocked off by officers and protesters. At this point, several officers began shooting rubber bullets at their vehicle.  The driver and passenger's side windows were shattered.  Officers instructed them to get out of the vehicle and one commented that they were lucky they were not real bullets.

35.     It is important to note, that while Arizona Governor Doug Ducey issued an emergency order declaring a "State of Emergency" imposing a curfew beginning at 8:00 p.m. on May 31, 2020, on all residents, statewide, said order exempted travel to obtain food, which was plaintiffs' reason for travel.

36.     Plaintiffs were advised they were being arrested and taken into custody.  They had to wait about one hour along with protesters to be transferred and booked into the Maricopa County 4th Avenue Jail.   While they waited, plaintiff Mr. Galaviz Riveras recognized an officer who he met at another occasion, and said unknown officer tried to release him with just a citation, however, another officer intervened and did not allow it.

37.     It was not until about midnight the following day, June 1, 2020, where plaintiff Mr. Galaviz Riveras was booked into said jail.  About 30 hours had passed from the point he was arrested until he was released from jail.  He was shocked from what he and plaintiff Ms. Johnson encountered that night.  He and plaintiff Ms. Johnson were not participating in the protests.  They were just looking for a place to have dinner. This has left plaintiff Mr. Galaviz Riveras dealing with physical and emotional distress due to the incident and arrest.  His Jeep was seriously damaged and resulted in costly repairs.  Officers shot rubber bullets at his Jeep that resulted in shattered windows and dents.

38.     About 30 hours had passed from the point plaintiff Ms. Johnson was arrested until she was released from jail.  She is still upset because when she was released from jail, she was only returned 1 out of 2 gold earrings, that her deceased mother gave her. Plaintiff Ms. Johnson spent 14 out of the 30 hours in an isolated cell because her temperature was

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

99.1.  She will never forget how freezing cold the cell was; the very small window; areas with vomit and urine; the sink being clogged; mold in vents; and the rotten orange she was provided.  Plaintiff Ms. Johnson later discovered that she was early in her pregnancy when this incident took place.  She and plaintiff Mr. Galaviz Riveras had their daughter on January 20, 2021.

39.     Plaintiff Ms. Johnson is still shocked about what she and plaintiff Mr. Galaviz Riveras encountered the night of their unjustified and brutal arrest.  She and plaintiff Mr. Galaviz Riveras were not participating in the protests and has had to endure emotional distress including dreadful nightmares and the fear to leave her home.

### Phoenix PD's Ongoing Unconstitutional Conduct

40.     Afterwards, PPD continued to target, falsely arrest, and maliciously prosecute Black Lives Matter demonstrators based on these individuals' politics, and not actions.  PPD officers even went so far as to make up a fictional gang to punish protesters.  These actions have resulted in the City hiring two independent agencies—Ballard Spahr and 21CP Solutions—to conduct three separate investigations into PPD's mishandling of the George Floyd protests between the dates of May and November 2020.  In addition, fourteen PPD officers in the Tactical Response Unit have been placed on desk duty pending these investigations, and 35 additional criminal cases have been voluntarily dismissed by the Maricopa County Attorney's Office.

### <u>COUNT ONE</u>

**(42 U.S.C. § 1983 – Excessive Force in Violation of Fourth Amendment to the United States Constitution**

**Against Defendants Chief Williams, Commander Orender, Sergeant McBride, Lieutenant Moore, Officer Tucker, Officer Merena, Officer Knapp and any additional Officers to be named)**

41.     Plaintiffs hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

42.     42 U.S.C. Section 1983 provides, in relevant part, as follows:

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

43.   Plaintiffs are citizens or residents of the United States with the rights to redress under section 1983.

44.   Defendants Chief Williams, Commander Orender, Sergenat McBride, Lieutenant Moore, Officer Tucker, Officer Merena and Officer Knapp and the currently unknown officers (collectively, the "PPD Defendants"), involved in the excessive use of force against Plaintiffs, are "persons" as that term is defined by 42 U.S.C. § 1983.

45.   The PPD Defendants and currently unknown officers were, at all times relevant hereto, acting under the color of law in their capacities as the City of Phoenix Police Department employees; their acts and omissions, were conducted within the scope of their official duties or employment.

46.   The PPD Defendants, as the decision-makers for both PPD and the Tactical Response Unit (the PPD unit that responded between the dates of May 30-31, 2020 protests) were aware of and authorized the PPD officers' use of force at the protests.

47.   At the time of the complained-of events, the Fourth Amendment to the United States Constitution clearly established Plaintiffs' right to be secure in his person from unreasonable seizure through excessive force.

48.   At the time of the complained-of events, any reasonable police officer would have known that the Constitution clearly establishes the right of American citizens to be secure in their persons from unreasonable seizure through excessive force.

49.   Defendants' actions and use of force – including but not limited to their unnecessary deployment of tear gas, pepper balls, pepper-spray, mace, rubber-coated bullets, and beanbag rounds – were objectively unreasonable in light of the facts and

circumstances confronting them and violated Plaintiffs' rights.

50.    Defendants' actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiffs' federally protected rights.

51.    Defendants engaged in the above-described conduct willfully, maliciously, in bad faith, with willful indifference to and in reckless disregard of plaintiffs' federally protected constitutional rights, and with conscious awareness that they would cause plaintiffs to suffer physical, emotional, and psychological injuries.

52.    Defendants' acts and/or omissions were moving forces behind Plaintiffs' injuries, causing them to experience physical injuries, physical pain, anxiety, humiliation, and/or emotional distress.  And each of the Plaintiffs have or will incur in the future, medical and related expenses, loss of property, and/or compensatory, economic, consequential, special and general damages in an amount to be proven at trial.

53.    Defendants are not entitled to qualified immunity for the conduct complained of in this Complaint.

54.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

## COUNT TWO

**(42 U.S.C. § 1983 – Unlawful Arrest and Imprisonment in Violation of the Fourth Amendment to the United States Constitution**
**Against Defendants Chief Williams, Commander Orender, Sergeant McBride, Lieutenant Moore, Officer Tucker, Officer Merena, Officer Knapp and any additional Officers to be named)**

55.    Plaintiffs hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

56.    42 U.S.C. Section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

13

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

57.    Plaintiffs are citizens or residents of the United States with the rights to redress under section 1983.

58.    Defendants Chief Williams, Commander Orender, Sergenat McBride, Lieutenant Moore, Officer Tucker, Officer Merena and Officer Knapp and the currently unknown officers (collectively, the "PPD Defendants"), officers involved in the excessive use of force against Plaintiffs, are "persons" as that term is defined by 42 U.S.C. § 1983.

59.    The PPD Defendants and currently unknown officers were, at all times relevant hereto, acting under the color of law in their capacities as the City of Phoenix Police Department employees; their acts and omissions, were conducted within the scope of their official duties or employment.

60.    The PPD Defendants, as the decision-makers for both PPD and the Tactical Response Unit (the PPD unit that responded between the dates of May 30-31, 2020 protests) undoubtedly were aware of and authorized the PPD officers' plans to "round up" protesters, or perceived protesters to charge them with either a misdemeanor or a felony, and support their arrests and charges using the identical cut-and-paste probable cause statement.

61.    At the time of the complained-of events, the Fourth Amendment to the United States Constitution clearly established Plaintiffs' right to be secure in his person from unreasonable seizure through an arrest unsupported by probable cause (an "unlawful arrest").

62.    At the time of the complained-of events, any reasonable police officer would have known that the Constitution clearly establishes the right of American citizens to be secure in their persons from unreasonable seizure through an unlawful arrest.

63.    At the time PPD Defendants and/or currently unknown officers caused Plaintiffs to be arrested, objectively reasonable police officers in the position of the PPD

Defendants and/or currently unknown officers would have concluded that there was <u>not</u> a fair probability that Plaintiffs had committed or were committing a crime.

64.     The actions of the PPD Defendants and/or currently unknown officers, as described herein, were malicious and/or involved reckless, callous, and deliberate indifference to Plaintiffs' federally protected rights.

65.     The actions of the PPD Defendants and/or currently unknown officers were moving forces behind Plaintiffs' injuries, intentionally depriving them of their constitutional rights and causing them other damages.

66.     The PPD Defendants and/or currently unknown officers are not entitled to qualified immunity for the conduct complained of in this Complaint.

67.     As a proximate result of the actions of the PPD Defendants and/or currently unknown officers unlawful and unconstitutional conduct, Plaintiffs suffered injuries and other damages and losses as described herein entitling Plaintiffs to compensatory, economic, consequential and special damages in an amount to be determined at trial.

68.     Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

## COUNT THREE

**(42 U.S.C. § 1983 – Municipal Liability under *Monell*
Fourth Amendment to the United States Constitution
Against City of Phoenix only)**

69.     Plaintiffs hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

70.     Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected by the Constitution.

71.     Such municipal liability exists when a city fails to properly train, supervise, or discipline its employees, amounting to a deliberate indifference to a plaintiffs' constitutional rights.

**ORTEGA LAW FIRM, P.C.**
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

72.     The Phoenix Police Department has a history of unlawfully deploying chemical and kinetic weapons to illegally disperse and disrupt non-violent protests.  In fact, over the past five years, PPD has been subject to multiple excessive force lawsuits, including an additional class action, brought by protesters.

73.     The Phoenix Police Department has a history of unlawfully arresting and maliciously prosecuting protesters based upon their anti-police violence beliefs, or perceived anti-police violence beliefs.  In fact, over the past five years, PPD has been subject to multiple lawsuits, brought by protesters claiming unlawful arrest and malicious prosecution.

74.     More, the mass arrests of 114 individuals, and the use of a cut-and-paste probable cause statement required mass coordination amongst hundreds of PPD officers. This coordination likely required approval of the probable cause statement and circulation amongst on-duty PPD officers.

75.     The PPD Defendants, as the decision-makers for both PPD and the Tactical Response Unit (the PPD unit that responded between the dates of May 30-31, 2020 protests) undoubtedly were aware of and authorized the PPD officers' plans to use force against protesters; "round up" protesters, or perceived protesters to charge them with either a misdemeanor or a felony; and support their arrests and charges using the identical cut-and-paste probable cause statement.

*Defendant City of Phoenix Ratified the Illegal Policies, Procedures, and Practices Utilized by PPD between the dates of May 30-31, 2020 Protests*

76.     The City of Phoenix has vested final decision-making authority in its Chief of Police, Defendant Jeri Williams, in the area of law enforcement and setting and implementing the policies and practices of the PPD, including but not limited to the development, implementation, and/or ratification of the PPD's procedures, policies, regulations, practices, and/or customs related to its use of force in response to political protests, the handling of large political protests, demonstrations, and marches, and the use

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone: (602) 386-4455

of chemical and kinetic weapons against civilians.

77.     Between the dates of May 30-31, 2020, PPD officers engaged in an inordinate and indiscriminate use of force, unnecessarily injuring hundreds of people attempting to express their views, and they did not without provocation, justification, or warnings. Worse, the types of weapons used against non-violent demonstrators—largely chemical weapons—forced individuals to remove their masks and cough and sneeze on one another during a global pandemic spread through respiratory droplets.

78.     Between the dates of May 30-31, 2020, PPD officers also conducted mass arrests in the downtown Phoenix area.  They arrested anyone who was on the street or in vehicles, whether they had attended a protest or not.  To support these mass arrests and cause individuals to be booked into jail, PPD officers used identical, and illegal, cut-and-paste probable cause statements.

79.     Immediately following this violent display of force and gross abuse of power, the procedures and violence used by PPD were ratified by Chief Williams who praised her officers' conduct during these protests and who refused to discipline any officers involved in these illegal activities.

80.     In a statement to the press about these arrests, Chief Williams said:  "[A]t the end of the day, I do know that my officers were functioning under justice, under trying to protect public safety, because our number one priority is safety.  So you're talking about pulling people out of cars . . . those cars were used to help fortify and give guns, knives . . . I'm sorry, rocks and bottles, water, food, to those individuals who were absolutely there to commit crimes."

81.     Afterwards, the City awarded PPD with millions of dollars in overtime for responding to these protests.

82.     These endorsements of police misconduct had the intended impact:  PPD failed to change its behavior, and instead continued to unlawfully arrest and maliciously prosecute Black Lives Matter protesters.

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

83.     In other words, the policies, patterns, practices, and/or customs of condoned misconduct are tacitly or overtly sanctioned by the City of Phoenix, as evidenced by the PPD's own history of similar misconduct; the conduct of the PPD Defendants both during and in the aftermath between the dates of May 30-31, 2020; the statements made by City leadership; and PPD's continued misconduct.  These policies, patterns, practices, and/or customs, violate the constitutional rights of Plaintiffs and others in Plaintiffs' situation.

84.     The condoning of the misconduct, and failure to end these policies, patterns, practices, or customs, was a direct and proximate cause of injuries suffered by Plaintiffs.

### As a Matter of Policy, Practice, and Custom, Defendant City of Phoenix and the PPD Defendants Failed to Adequately Train PPD Officers in Lawful Crowd Control Techniques and Proper Arrests

85.     The City of Phoenix has vested final decision-making authority in its Chief of Police, Defendant Jeri Williams, in the area of law enforcement and setting and implementing the policies and practices of the PPD, including but not limited to the development, implementation, and/or ratification of the PPD's procedures, policies, regulations, practices, and/or customs related to its use of force in response to political protests, the handling of large political protests, demonstrations, and marches, and the use of chemical and kinetic weapons against civilians.

86.     Defendant Williams and her delegated command staff, including the PPD Defendants in charge of supervising and/or managing the Tactical Response Unit, were aware that the unlawful use of dangerous weapons in violent and unlawful ways to break up peaceful associations and speech is a regular practice of PPD personnel. Indeed, many of the PPD Defendants have been named in multiple lawsuits making similar claims.

87.     Defendant Williams and her delegated command staff, including the PPD Defendants in charge of supervising and/or managing the Tactical Response Unit, were aware that PPD personnel would unlawfully arrest protesters as a way to disrupt and discourage peaceful associations and speech; particularly speech critical of either PPD or police in general. Indeed, many of the PPD Defendants have been named in multiple

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004-1525
Phone: (602) 386-4455

lawsuits making similar claims, and this regular practice is now the subject of three independent internal investigations in the City of Phoenix.

88.     It was therefore critical to take all steps necessary to ensure that official policy was changed and that officers were trained in a manner sufficient to address the well-known, constitutionally deficient practices and customs that violate individuals' Fourth and Fourteenth Amendment rights.

89.     Defendant City and the PPD Defendants have known of the deficiencies in PPD policies and training since at least 2010.  Despite the long history of unlawful PPD conduct at First Amendment assemblies and demonstrations, and the longstanding deficiencies in the training of PPD line and command staff on proper law enforcement conduct, the City failed to adequately train its officers and command staff prior to the dates of May 30-31, 2020 at protests in the rights of demonstrators, lawful crowd control, dispersal orders, separating those engaged in lawful conduct from those engaged in unlawful conduct, the permissible use of "less-than-lethal" weapons during demonstrations, the permissible use of force in such situations, and lawful arrests.  This failure amounted to deliberate indifference to the rights of persons with whom PPD come into contact.

## COUNT FOUR

### (Negligent Supervision and/or Training
### Against Defendant City of Phoenix Only)

90.     Plaintiffs hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

91.     Defendant the City was negligent in failing to train and supervise, or otherwise control defendants Chief Williams, Commander Orender, Sergenat McBride, Lieutenant Moore, Officer Tucker, Officer Merena and Officer Knapp and the currently unknown officers.

92.     As a direct and proximate result of the negligence of defendant the City as alleged above, caused emotional distress to plaintiffs and property damage to plaintiff

Mr. Galaviz Riveras' vehicle.

## COUNT FIVE

### (Intentional Infliction of Emotional Distress
### Against Defendant City of Phoenix Only)

93.     Plaintiffs hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

94.     As set forth above, employees of Defendant City of Phoenix, acting in the course and scope of their employment, engaged in a series of acts that an average member of the community would regard as atrocious, intolerable in a civilized community, and beyond all possible bounds of decency.  In particular, employees of Defendant City of Phoenix caused Plaintiffs to be unlawfully arrested for misdemeanors they did not commit, detained them for hours, and ultimately caused them to be booked into jail during a global respiratory pandemic.

95.     These employees of the City either they personally participated in these activities, acted jointly or conspired with others who did so; authorized, acquiesced in, or set in motion policies, plans, or actions that led to the unlawful conduct; failed to take action to prevent such unlawful conduct; failed to maintain adequate training and supervision in deliberate indifference to Plaintiffs' rights; and ratified unlawful conduct that occurred by agents and officers under their direction, supervision, and control, including failing to take remedial or disciplinary action.

96.     The aforementioned conduct was intentional insofar as it intended to cause Plaintiffs emotional distress.

97.     The aforementioned conduct was reckless because those engaging in that the employees of the Defendant City of Phoenix were aware of and consciously disregarded the near certainty that their actions would cause Plaintiffs emotional distress.

98.     The aforementioned conduct did, indeed, cause Plaintiffs to suffer emotional distress.

99.     As a direct and proximate result of these actions, Plaintiffs were injured and

ORTEGA LAW FIRM, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455

suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs request that the Court grant relief against defendants as follows:

    A.    For compensatory damages (general and special) in an amount to compensate plaintiff fully and fairly for the violations of her Constitutional Rights;

    B.    For nominal damages as provided for by law;

    C.    For punitive damages in an amount sufficient to punish defendants and deter them from similar unconstitutional and unlawful conduct in the future;

    D.    For pre-judgment interest on all liquidated sums;

    E.    For attorney's fees under 42 U.S.C. §§ 1983 and 1988;

    F.    For plaintiff's costs and other expenses incurred in this action; and

    G.    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all issues in this matter triable to a jury.

**DATED** this 28th day of May, 2021.

            **ORTEGA LAW FIRM, P.C.**

            By: /s/ *Daniel R. Ortega, Jr.*
                Daniel R. Ortega, Jr.
                361 East Coronado Road, Suite 101
                Phoenix, Arizona 85004-1525
                *Attorney for Plaintiffs*

**ORTEGA LAW FIRM, P.C.**
361 East Coronado Road, Suite 101
Phoenix, Arizona  85004-1525
Phone:  (602) 386-4455